UNITED STATES, for Use and Benefit of FARWELL, OZMUN, KIRK & CO. v. SHEA–ADAMSON CO. et al. (CONDI-TIONEDAIRE, INC., et al., Interveners).

No. 3712.

District Court, D. Minnesota, Fourth Division.

Dec. 18, 1937.

832

Kelehan & Dady, of St. Paul, Minn., for plaintiff.

Kerr, O'Neill & Cragg, of St. Paul, Minn., for defendant Shea-Adamson Co.

Jacob Yaffe, of Chicago, Ill., and Louis H. Joss, of Minneapolis, Minn., for defendants Nils P. Severin and Alfred N. Severin, copartners doing business as N. P. Severin Co., and defendant Royal Indemnity Co.

Coursolle, Preus & Maag, of Minneapolis, Minn., for intervener Emil A. March.

Brill & Maslon, of Minneapolis, Minn., appeared as attorneys for the intervenor, Conditionedaire, Inc.

SULLIVAN, District Judge.

This is an action by the United States of America, for the Use and Benefit of Farwell, Ozmun, Kirk & Co., a corporation, against Shea-Adamson Company, a corporation, Nils P. Severin and Alfred N. Severin, copartners doing business under the name and style of N. P. Severin Company, and Royal Indemnity Company, a corporation, under the provisions of the Heard Act, 40 U.S.C.A. § 270.

This suit is brought by the plaintiff materialman to recover the unpaid balance on certain materials furnished to the Shea-Adamson Company, the subcontractor, in the performance of its contract in constructing and installing a ventilating system in the post office building in Minneapolis, Minn.

N. P. Severin Company is the general contractor. The defendant Royal Indemnity Company is the surety on its bond given in connection with said job contract, and Shea-Adamson Company is one of the subcontractors on said job for the ventilating system.

The Heard Act, 40 U.S.C.A. § 270, authorizes a cause of action in the form in which this one is brought, in favor of subcontractors, laborers, and materialmen, and the time within which they must bring the suit is limited to one year after the completion of the work and "final settlement" of the contract, but it may not be brought within the first six months of such period, which is reserved to the United States to sue on its own account.

This suit was started on the 30th day of December, 1936, and the final settlement of the general contract for the construction of said post office building was made May 14, 1936. When one action has been brought, all the other creditors must intervene therein within one year from the date of the final settlement. 40 U.S.C.A. § 270;

United States, for Use of Joseph Tino & Co., Inc., v. Rangely Const. Co., Inc., et al., D.C., 288 F. 76.

Two complaints in intervention within the time allowed by law were filed:

(a) The claim of Emil A. March. During the progress of the trial, a stipulation of settlement and dismissal of said claim was filed.

(b) The claim of Conditionedaire, Inc.

The claim of the plaintiff was duly settled and dismissed during the progress of the trial.

The complaint in intervention of Conditionedaire, Inc., is divided into four claims, all of which said claims were duly sold and assigned by the original claimants, materialmen, and laborers, to the intervener, Conditionedaire, Inc., before the bringing of this action.

The different claims of Conditionedaire, Inc., will be taken up in order, viz.:

### Minneapolis Roofing Company.

William H. Gausewitz and Louis C. Provencial, copartners doing business as the Minneapolis Roofing Company, on February 28, 1934, sold and delivered directly to the N. P. Severin Company certain building materials, which were incorporated in the Minneapolis post office building, and on which a balance of $133 is due, payment thereof being demanded on or before March 10, 1934. This claim has been established, and no evidence in opposition thereto was offered or received at the trial.

### Minnesota Steel Supply Company.

This company sold and delivered, between February 12, 1934, and June 7, 1934, to the Shea-Adamson Company certain materials which were incorporated in the ventilating job in said Minneapolis post office building, upon which there is a balance due of $346.87, payment of the balance having been duly demanded on or before November 10, 1934. The amount of the account is undisputed, and it is conceded that said materials went into the Minneapolis post office ventilating job. It is further conceded that demand for the payment of the said balance was made on the Shea-Adamson Company on March 10, 1934.

It is, however, contended on the part of the defendants N. P. Severin Company and Royal Indemnity Company that they are not liable on said claim by reason of the

fact that a waiver or release of the claim was executed by the Minnesota Steel Supply Company and delivered by it to the Shea-Adamson Company, which in turn delivered it to the N. P. Severin Company.

■ (a) The question arises as to whether or not the release of the Minnesota Steel Supply Company bars it from a recovery against the general contractor and its surety. The release is dated December 30, 1933, and was on the same date delivered to the Shea-Adamson Company. The release, among other things, reads as follows, " * * * do hereby waive and release any and all liens, claims, or right of liens on said above described building and premises, and do further release N. P. Severin Company and their sureties and the owners of the above described building on all claims and demands whatsoever, on account of labor or materials, or both, furnished or which may be furnished by the undersigned for said building or premises," and the release in other parts refers to the United States post office at Minneapolis, Minn.

It appears from the record that there was no actual intention to waive any known right. In fact, at the time of the execution of said release, there was in existence no right in favor of claimant as against Shea-Adamson Company, the general contractor, or its surety. At the time the so-called release or waiver was signed, the material which was involved in this action had not been furnished or ordered. The items in the claim of the Minnesota Steel Supply Company evidence sale and delivery of materials on February 12, 1934, May 16, 1934, and June 7, 1934.

To waive or release a lien right, it must appear to be supported by a consideration. Abbott v. Nash, 35 Minn. 451, 452, 29 N.W. 65.

There was no consideration in the instant case for the release, nor does the record disclose any grounds of estoppel barring the intervener from asserting this claim. No receipt was ever given by the Minnesota Steel Supply Company for the payment of the account. All that was given was a writing in the form of a release of lien on the lands and buildings, of course such release of lien being with reference to the building, the Minneapolis post office, was without any force or effect, since claimant would under no circumstances have a right to file a lien against a government building, and a release of right of claim as against the general contractor and its surety, but was in no manner a release of any claim against the Shea-Adamson Company, or was it in satisfaction of any claim against the Shea-Adamson Company. The release is not a bar to a recovery on this claim. See Kubu v. Kabes, 142 Minn. 433, 172 N.W. 496; Ohio Confection Co. v. Eimon Mercantile Co., 154 Minn. 420, 191 N.W. 910, 31 A.L.R. 952; Duncanson v. Chicago Title & Trust Co., 188 Ill.App. 551; Empire State Surety Co. v. Hanson, 8 Cir., 184 F. 58; Antrim Lumber Co. v. Neal et al., 172 Okl. 292, 44 P.2d 939; Johnson v. Spencer, 49 Ind.App. 166, 96 N.E. 1041; Cellized Floors, Inc., v. Glens Falls Indemnity Co. of New York, 156 A. 845, 9 N.J.Misc. 1111.

The record shows that the general contractor had supervisors and foreman on the job, and that it either had knowledge of the truth of the fact that at the time of the delivery of the waiver or release that said materials referred to in said itemized statement had not been delivered on the job or furnished to the Shea-Adamson Company, or in any event, the general contractor had the means by which, with the use of reasonable diligence, it could acquire this knowledge. There was no showing that the general contractor or its surety suffered any damage by reason of the so-called release, or waiver.

### Minneapolis Roofing Company— Second Claim.

■ A second account of the Minneapolis Roofing Company, being the account with Shea-Adamson Company, is evidenced by a claim for an unpaid balance in the sum of $2,336.01, being for dampers delivered by it to the Shea-Adamson Company in the performance of its contract, and incorporated in the Minneapolis post office building, and is undisputed. The only question with reference to this claim is as to the date when interest on said account commences to run.

The contract between the Minneapolis Roofing Company and the Shea-Adamson Company contains this clause: "Payments as noted above to be made when and as paid by the N. P. Severin Company." The contract further provides that payments were to be made on the 1st and 15th of the month following date of delivery. The last substantial payment by the general contractor to the Shea-Adamson Company on the contract was on April 30,

1934, at which time there was paid by the general contractor to the Shea-Adamson Company the sum of $1,975.52. The dampers, etc., furnished by the Minneapolis Roofing Company had long theretofore been furnished to the subcontractor and installed in the ventilating job. Payment of the claim was demanded by the Minneapolis Roofing Company of Shea-Adamson Company prior to December 1, 1934, but the terms of the contract were known to all of the interested parties, the contract was completed on May 1, 1934, and interest should run from that date.

## Cook's Claim.

This cause of action is to recover the unpaid contract price which accrued before and after the discharge of Mr. Cook from the services of the defendant Shea-Adamson Company, for the period of time this defendant had agreed to employ him, and for the use of his equipment, including tools and scaffolding.

The Cook agreement is in writing, being attached and made a part of the complaint in intervention of Conditionedaire, Inc., and, among other things, it provides:

"Will act as supervising superintendent on the ventilating installation on the job, it being understood that I (Cook) will devote all the time necessary to properly supervise the job."

"In the event that extra work on the job is required, I (Cook) will devote such time as is necessary after working hours for the figuring thereof. All work will be done in accordance with your instructions."

"I (Cook) will at all times furnish sufficient tools, apparatus and scaffolding so that there will be no delay in the completion of the job, at my own expense do all hauling of tools, equipment, apparatus and scaffolding to and from the job."

"I agree to perform the foregoing for the sum of $75.00 per week, payable weekly, with the understanding that such salary is to commence Monday, June 5, 1933, and with the further understanding that this hiring is for the duration of said ventilating job in the Postoffice at Minneapolis, Minn. From said weekly payment of salary you may hold, take and retain $15.00 weekly, to be retained until the completion of the job."

(a) The first question which arises in the Cook claim is, Did he violate the provisions of his contract? Some evidence has been introduced on the part of the defendants to the effect that there was insufficient equipment, machinery, and tools upon the job, including scaffolding, and that Cook spent insufficient time in the supervision of the construction work. This testimony comes largely from the defendant Mr. Shea. However, the evidence, coming from Mr. Cook, Mr. Hanson, and others, convinces the court that the contentions of the defendants in this respect are without foundation in fact. The evidence satisfies the court that Mr. Cook spent as much time as was necessary in supervising the installation and construction of the ventilating job involved in this suit. It does appear that there were conferences between Cook and Mr. Shea with reference to certain matters with which Mr. Shea was displeased, but the evidence discloses that these disagreements between Cook and Shea were determined, and that Mr. Cook continued on under his contract to supervise the job.

(b) On or about June 11, 1934, Cook was discharged by Mr. Shea. No justifiable grounds appear in the record for such discharge. It appears from the evidence that shortly after the discharge of Cook, Mr. Shea made certain investigations to determine whether or not Cook had taken and converted to his own use certain steel belonging to the Shea-Adamson Company. Evidence was introduced as to the results of this investigation, and the court is of the opinion that such suspicions on the part of the defendants, and Mr. Shea, are entirely without any foundation in fact.

(c) Did Cook substantially perform his contract? There is substantial evidence in the case tending to prove that there was very little supervisory work necessary on the job, from and after Cook's discharge. There is evidence that the work of installation of the ventilating system continued for a period of six or seven months from and after the discharge of Cook. The evidence, however, discloses that supervisory work which was necessary on the job had been substantially performed previous to the date of the discharge of Cook. Even though the Cook contract may in some respects be different from a contract for the erection of a building, the principle is the same, and on the question of substantial performance, it is stated in the case of Potter v. Barton, 86 Minn. 288, 90 N.W. 529:

"The doctrine of the sufficiency of a substantial performance of an ordinary

contract has repeatedly been recognized in this court, although no cause has been presented in which the rights of employé and employer have been at issue. Substantial compliance with the terms of a contract is all that is required, and ordinarily this question is for the jury. It follows that employers assuming to be final arbiters in their own behalf of the propriety of dismissing their employés during their terms of employment take the responsibility which attaches to a dismissal without cause."

In the case of Henry v. Jons et al., 164 Iowa, 364, 145 N.W. 909, it is stated that substantial performance permits only such omissions or deviations from the contract as are inadvertent or unintentional, are not due to fraud, do not impair the structure as a whole, are remedial without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price. See, also, Stansell v. Leavitt, 51 Mich. 536, 16 N.W. 892; Hoglund et al. v. Sortedahl et al., 101 Minn. 359, 112 N.W. 408.

When one party has received the benefits of substantial performance by the other, without paying for them the price agreed upon, and he cannot or does not return these benefits, it is manifestly unjust to permit him to retain such benefits without paying, or doing as he promised to do, on account of his receipt of them. In this case an examination of the contract discloses that the same not only provided for the supervision of the job on the part of Cook, but it also provided that Cook was at all times during the construction and installation of the job, to furnish sufficient tools, apparatus, and scaffolding so that there would be no delay in the completion of the job, at his own expense, and to do all hauling of tools, equipment, apparatus, and scaffolding to and from the job. The evidence does disclose that after the discharge of Cook, the Shea-Adamson Company continued to use the equipment, scaffolding, etc., of Cook, and the scaffolding was retained by the defendant company until after the completion of the job. Can it now be said by the Shea-Adamson Company that Cook failed and omitted to perform his part of the contract, while it has retained the benefits of the labor of Cook in and upon said job, and while it has also retained and used his property, tools, equip-ment, apparatus, and scaffolding until the completion of the job? It would be an injustice to Cook for the court to determine in this case that he was not entitled to compensation in accordance with the contract. In order to avoid such an injustice, the party who has substantially performed may bring suit on a contract to recover the amount of the consideration set out therein, while the defendant, on the other hand, may recover by counterclaim, or by an independent action, the damages which he has sustained from the plaintiff's failure to completely fulfill his covenants. Its remedy, if any, in this case was a counterclaim for such damages as it may have sustained by reason of Cook's failure to perform the contract in all the respects which it claims Cook did not. See German Sav. Inst. v. De La Vergne Refrigerating Machine Company, 8 Cir., 70 F. 146–150; Kauffman v. Raeder, 8 Cir., 108 F. 171, 54 L.R.A. 247.

In Blakely v. J. Neils Lumber Company, 121 Minn. 280, 141 N.W. 179, 180, it is stated:

"The plaintiff, therefore, having declared upon an express contract, which has not been strictly performed, must recover, if at all, under the doctrine of substantial performance, which contemplates that the defendant may recoup any damages suffered by reason of the plaintiff's failure of strict performance. In such case he cannot recover upon a quantum meruit. [Citing Johnson v. Fehsefeldt, 106 Minn. 202, 118 N.W. 797, 20 L.R.A.(N.S.) 1069]. Nor can he be awarded full payment as for a strict performance, without regard to the damages suffered by the defendant (See Sykes v. St. Cloud, 60 Minn. 442, 62 N.W. 613; Gray v. New Paynesville, 89 Minn. 258, 261, 94 N.W. 721), provided, of course, such damages are properly pleaded."

The defendant Shea-Adamson Company has offered no evidence to show what damages, if any, it sustained by reason of the claims made by that defendant to the effect that Cook had failed in some respects to perform his contract. This is a suit based upon a contract. The defendant cannot receive, accept, and retain some of the benefits of the contract, and intentionally retain the use of the tools, equipment, scaffolding, etc., part of the consideration on Cook's part under the contract, and, on the other hand, deny any liability thereon.

(d) The Cook contract is entire, and not severable. The contract provided for the personal services of Mr. Cook, and

also provided that he should furnish sufficient tools, apparatus, scaffolding, etc. The consideration moving from Cook to the Shea-Adamson Company may be divided into, first, the personal services to be rendered by Cook, and, second, the use of the Cook equipment by the Shea-Adamson Company during the period of the Minneapolis post office ventilating job. After Cook's discharge on June 11, 1934, the Shea-Adamson Company continued to retain and use his equipment, which included the tools and scaffolding. It is impossible from any evidence to apportion any part of the agreed price of $75 per week for the duration of the job to either the supervisory services of Mr. Cook or to the value of the use of the equipment.

In the case of Bentley et al. v. Edwards et al., 125 Minn. 179, 146 N.W. 347, 51 L.R.A., N.S., 254, Ann.Cas.1915C, 882, it is stated that there can be no apportionment of an entire contract, and in the case of an entire contract, part performance does not entitle a party to pro rata compensation unless full performance is prevented by the other party. See, also, U.S. v. Behan, 110 U.S. 338, 339, 4 S.Ct. 81, 28 L.Ed. 168.

The mere fact that the compensation to be paid Cook under the contract was in weekly installments is unimportant. See Bentley et al. v. Edwards et al., supra; Diefenback v. Stark, 56 Wis. 462, 14 N.W. 621, 43 Am.Rep. 719; Schultz v. Andrus' Estate, 178 Wis. 358, 190 N.W. 83.

■ (e) As to the duration of the contract, it is provided as follows: " * * * and with the further understanding that this hiring is for the duration of said ventilating job in the Postoffice at Minneapolis, Minnesota."

It appears clear from the wording of the contract that Cook's employment, together with rental of his equipment, was for the entire duration of the ventilating job in the post office. The language in this respect does not seem to be ambiguous. It indicates clearly that this contract with Cook was to run up and until the completion of the ventilating job, and that he was to be compensated in accordance with the contract for his labor and services as à supervisor, and for the use of his equipment, in the sum of $75 per week, from and after the date of the modification as to compensation of the contract, up until the job was accepted or completed, which the record discloses was the 5th day of February, 1935. No evidence was introduced or offered with reference to any other intention on the part of the parties to such contract.

■ (f) The type of work done by Cook is clearly within the purview of the statute. In the case of American Surety Company of New York v. United States ex rel. Barrow-Agee Laboratories, Inc., 5 Cir., 76 F.2d 67, 68, construing the word "labor" in the statute, the court states:

"It may be true that the term 'labor' in this statute, as generally in statutes relating to mechanics' liens, refers to physical labor rather than technical and professional skill and judgment, but an architect or other skilled man who actually superintends the work as it is done is by the weight of authority furnishing labor. Breeding v. Melson, 4 W.W.Harr.(Del.) 9, 143 A. 23, 60 A.L.R. 1252, and note. It was so held under the federal statute where the superintendent did some manual labor in Bankers' Surety Co. v. Maxwell (C.C. A.) 222 F. 797. See, also, Flagstaff Silver Mining Co. v. Cullins, 104 U.S. 176, 26 L.Ed. 704; Massachusetts Bonding Co. v. Steele (Tex.Civ.App.) 293 S.W. 647; Continental Bank v. North Platte Co. (C.C.A.) 219 F. 438; Central Trust Co. v. Richmond, N. I. & B. R. Co. (C.C.) 54 F. 723."

In the case of Massachusetts Bonding & Insurance Company v. Steele, Tex.Civ. App., 293 S.W. 647, the court held that a superintendent of construction, keeping other laborers' time, paying them promptly, and attending to other things naturally arising in construction, came within the provisions of a Texas statute, Rev.St.1925, art. 5160, as amended by Acts 1929, c. 226, § 1, Vernon's Ann.Civ.St.Tex. art. 5160, requiring the contractor to execute a bond for the prompt payment of all persons supplying labor.

■ (g) Cook did not waive his right to sue the general contractor and its surety by signing a receipt for payment in full, this receipt having been signed prior to the date of Cook's discharge, and having been turned over to the N. P. Severin Company.

The testimony is undisputed that Cook protested to Lundquist, the superintendent for the N. P. Severin Company, the first time the form of release or waiver was presented to him for signature, and Lundquist told him that he kept a record of what was paid and what was left unpaid, and to

838

pay no attention to the form since the men would get what they had coming even though they signed the form, whereupon Cook and the other men continued to sign the form of release.

What has been said heretofore with reference to the Minnesota Steel Supply Company's claim is applicable to the Cook claim. The Shea-Adamson Company pleaded estoppel, but in view of the testimony of Cook with reference to his conversation with Lundquist, that disposes of the question of estoppel. Further, it does not appear that the N. P. Severin Company was damaged to any extent by any reliance upon the Cook releases or waivers.

 As for the surety company on the general contractor's bond, it is well settled that where the principal remains bound, the surety cannot object. See U. S. v. National Surety Company, D.C.So.Div. of Ala., 20 F.2d 972; Van Kirk v. Adler, 111 Ala. 104, 20 So. 336; U. S., for Use and Benefit of Johnson, v. Morley Const. Co. et al., D.C.West.Div. of N.Y., 17 F.Supp. 378.

 (h) As to interest on the claim of Cook, it is the rule that where the penalty of a government contractor's bond is sufficient to pay all claims against the contractor, the claimant is entitled to recover such interest as might have been recovered against the contractor.

In the case of Fidelity & Deposit Company v. United States, 3 Cir., 229 F. 127, 129, it is stated:

"And we find nothing more substantial in the surety's second objection to the judgment below, namely, the inclusion of interest. The District Court awarded to Witman the amount of interest to which he would have been entitled if he had been suing Emery, and this is precisely the obligation that the surety undertook to make good. It is not a case where a surety is asked to pay interest on the penal sum of the bond; in such a situation the award of interest is governed by circumstances that are not present here. The total of Emery's debts secured by the bond do not exceed $3,500, so that the penal sum of $18,000 is much more than is necessary to pay all the claims, principal and interest. In a word, the surety is merely asked in this suit to fulfill its contract, and we can see no rea-son why (up to the limit of the penal sum) it should not carry out the contract by paying interest as well as principal. Since Emery failed to make payment promptly he was unquestionably chargeable with interest, and this is the default the surety agreed to take care of. There have been delays in ascertaining the exact amount of the surety's obligation, but the delays belong to the statutory remedy, and of this the surety was fully informed when it executed the bond."

 Where claims are asserted against a surety company on a bond given to the government for the faithful performance of a contract, for a sum in excess of the full amount of the penalty of the bond, the interest is limited to commence running from the date of the demand on the surety company. See American Surety Co. of New York v. Lawrenceville Cement Co., C.C., 110 F. 717.

 In this case the aggregate of the claims asserted against subcontractor and general contractor are not in excess of the penalty of the bond given on this job by the general contractor. In fact, the claims asserted are a very small percentage of the bond, and so there can be no question but what the intervener is entitled to interest on the Cook claim, and the other claims, from the dates set out in the findings.[1]

---

[1] The findings disclose that interest was awarded on the Cook claim from February 5, 1935; on the Minnesota Steel Company claim from March 10, 1934; on the Minneapolis Roofing Company claim of $2,336.01 from May 1, 1934; and on that company's claim of $133 from March 10, 1934.