# Van Kirk v. Adler.

*Bill in Equity to enjoin the Execution of a Decree, and to Re-open an Account.*

1. *Injunction; stockholder of a corporation can not enjoin the enforcement of a decree and re-open an account stated between creditor and corporation.*—Where an account has been stated between a corporation and a creditor, and a mortgage given by the corporation to secure the balance ascertained to be due, and the mortgagor subsequently re-affirms the correctness of the account and consents to a decree of foreclosure, a stockholder of said corporation can not maintain a bill in his own name against the said corporate creditor, to enjoin the execution of the decree of foreclosure and to re-open the account, because of supposed false or over charges, in the absence of any fraud or collusion between the mortgagor corporation and the mortgagee for the purpose of prejudicing such stockholder.

2. *Stockholder can not interpose a defense as guarantor of his corporation, which the corporation has precluded itself from making.*—A stockholder of a corporation can not, as a guarantor of, or surety for, a debt contracted by said corporation, make a defense to the payment of the debt, which the corporation has waived or repudiated, or by its conduct has precluded itself from making.

APPEAL from the Chancery Court of Escambia.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellant against the appellee, on November 12, 1894. It appears from the statements of the bill that the Van Kirk Land & Construction Company was a corporation organized under the laws of the State of Alabama, with a capital stock of one thousand dollars, and proposed to purchase and did purchase, from the Mobile & Girard Railroad Company, more than one hundred and fifty thousand acres of land, at and for the price of one hundred and forty-two thousand, five hundred dollars. It was only enabled to do this by reason of the indorsement of its notes for the purchase money of these lands by Worth-

ington, Elliott & DeBardeleben. The last named firm was also induced by said Van Kirk Land & Construction Company to agree to do certain work in the matter of the extension of said Mobile & Girard Railroad Company, and to receive from said first named company, in addition to the amount paid by the railroad company, 4 cents per cubic yard for all excavations and embankments, and 5 cents each for cross-ties. To secure the said Worthington, Elliott & DeBardeleben against loss on account of their indorsement of said Land Company's notes, and to protect them in the payment of the amount which said Land Company agreed to pay them, in addition to the price promised by the railroad company, the said Van Kirk Land & Construction Company executed a mortgage upon all the lands purchased from said railroad company ; and said company, as further security to said firm against liability on account of its indorseme..t aforesaid, transferred and assigned four thousand, four hundred and ninety-six shares of stock of the Perdido Land Company, a corporation organized under the laws of the State of Florida, with power of sale, it being expressly stipulated that said Perdido stock might be sold for the reimbursement of said firm, without first selling the lands under the mortgage. After the work upon said extension was completed, there was a full and final accounting between said Van Kirk Land & Construction Company, of which complainant was president, and said firm of Worthington, Elliott & DeBardeleben, on the 5th day of July, 1893. By the terms of the contract between the parties, the amount ascertained to be due had really been due and payable on or before the 30th day of April, 1891, but no explanation is given in the bill as to the cause of this long delay in coming to the final settlement.

At the time of said final accounting between said parties, the mortgage upon the lands and the pledge of the stock in the Perdido Land Company given to secure the amount due Worthington, Elliott & DeBardeleben, and to protect them against their indorsement of the Land Company's note, were held by appellee, Morris Adler, as collateral security, for certain indebtedness, which said firm owed him ; but after said accounting and the execution of the notes by said Van Kirk Land & Construction Company, appellee, Morris Adler, purchased said notes and said mortgage, together with all

the interest of said firm, in the stock of the Perdido Land Company absolutely. Thereupon said Van Kirk Land & Construction Company, acting by and through complainant as its president, and with the approval of its directors and stockholders, desiring still further time for the payment of said indebtedness, evidenced by said notes, and due to Worthington, Elliott & DeBardeleben, agreed with appellee, Morris Adler, as the assignee, holder and owner of said notes, in consideration of the granting of such extension, to cause such decree to be entered in his favor, and did cause such decree to be entered as aforesaid, on the 24th day of March, 1894, foreclosing the said mortgage, and ordering a sale of the lands therein described, to satisfy the amount of said indebtedness to him, viz., one hundred and fifty-nine thousand, one hundred and twenty dollars. The agreement for the entry of said decree was executed by complainant himself, as the president of said Van Kirk Land & Construction Company, and was submitted to and ratified and approved by both the stockholders and directors of said company, regularly convened for that purpose.

All of this appears from the agreement itself, which, among other recitals, not sufficiently material to be here enumerated, contains the following stipulation : "Whereas, there has been an accounting bet een the said Van Kirk Land & Construction Company, and the said Worthington, Elliott & DeBardeleben, and secured by said mortgage which was held on or before the 5th day of July, 1893, and as a result of such accounting and evidence of the amount owing to said Worthington, Elliott & DeBardeleben, on the demands secured by said mortgage, the said Land Company did then execute and deliver to the said Worthington, Elliott & DeBardeleben, its twenty-two promissory notes, from one to twenty-two inclusive, dated 5th day of July, 1893, and payable to the order of said Worthington, Elliott & DeBardeleben. * * * * * All of said notes aggregating the sum of $159,120, which was and is the true amount owing by the said Land & Construction Company to the said Worthington, Elliott & DeBardeleben, and secured by said mortgage, of which $69,176 was for money paid by them on the note of the Mobile & Girard Railroad Company, and endorsed by them, set forth in said mortgage,

which is evidenced by and embraced in the notes numbered 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10, aforesaid, and the balance of said sum is for and on account of the demands in said mortgage mentioned, for excavation, embankment and cross-ties, which balance is evidenced by and embraced in the other of said 22 promissory notes; and

"Whereas, all of the said 22 promissory notes and the demands evidenced thereby, and the said mortgage securing the same have been duly transferred and assigned by the said Worthington, Elliott & DeBardeleben, to Morris Adler, who is now the owner thereof.    *    *

. "And whereas, the Land & Construction Company desire further time in which to pay off and discharge the indebtedness due on the said mortgage, and the said Morris Adler has agreed to grant such extension, and to give said company such time under the agreement between them hereinafter set forth.

"Now, therefore, the said Van Kirk Land & Construction Company and the said Morris Adler, do agree to and with each other as follows, to-wit: That the said Morris Adler shall, therefore, have a decree foreclosing said mortgage to be rendered by any court of competent jurisdiction, upon a bill to be filed by him for such purpose in said court. Said decree to be rendered in term time or vacation, and, when entered, shall be final and conclusive between said parties, which bill has been prepared and submitted to said company, which decree shall declare and determine that there is owing to said Morris Adler from said Van Kirk Land & Construction Company on account of the demands secured by said mortgage, the respective amounts heretofore agreed upon by the said accounting and evidenced by said promissory notes as aforesaid."

Without paying any part of the amount admitted to be due to appellee, Morris Adler, and after he had caused the register to advertise the lands for sale under the terms of the decree, and advertised the sale of the Perdido stock under the power of sale contained in the pledge, complainant, W. J. Van Kirk, on the 12th day of November, 1894, filed this bill for another accounting, and for an injunction against the execution of said decree and the sale of said Perdido Land Company's stock.

There is no averment in the original bill, or in the

amendments thereto, which charges that the accounting solemnly made between the parties, on the 5th day of July, 1893, and further confirmed by all of the parties in interest, the complainant himself included, on the 23d day of March, 1894, and which passed into and became a part of the decree of the chancery court of Escambia county on the following day, was in any respect erroneous. The whole averments of the bill, as amended, in this regard are as follows : "Your orator further states unto your honor, that after the title to said lands vested in the Van Kirk Land & Construction Company by virtue of the approval of the act of Congress of September 29, 1890, under the decision of the Secretary of the Interior of the United States, rendered April 24, 1893, it was claimed by J. W. Worthington, as a member of the firm of Worthington, Elliott & DeBardeleben, that he had paid on the said note so indorsed by Worthington, Elliott & DeBardeleben, the sum of to-wit, fifty-seven thousand dollars, which amount he claimed had been deducted from their estimates for work done as contractors in the construction of said road, but no money has ever been paid at all, and that there was due him on account of and for the excess in prices of fourth-class material and cross-ties, as set forth in the fourth paragraph of said contract, the sum of, towit, $60,000. And the said Van Kirk Land & Construction Company in a statement of account, agreed that said sums were correct.

"Your orator further states unto your honor, that he is not informed as to the correctness of the amount of money paid by the said Worhington, Elliott & DeBardeleben, or by said J. W. Worthington, or by any one else, upon the said promissory note, and that no amount has ever been credited on said note, and he is not informed as to whether in fact any payment has ever been made on the note by him or any person except in so far as the statement so made by the said J. W. Worthington, of the firm of Worthington, Elliott & DeBardeleben, in the said settlement with the said Van Kirk Land & Construction Company, nor is your orator informed as to the correctness of the amount due to said Worthington, Elliott & DeBardeleben, upon the said excess in prices for work done and ties furnished by and for them in the said extension of the said Mobile & Girard Railroad, except as to the agreement made by said Van Kirk Land

& Construction Company with the said Worthington, Elliott & DeBardeleben.''

The words "and that no amount has ever been credited on said note," included above, were not in the original bill, but were added by amendment, filed January 7, 1895. By the amendment filed on said last named day, an additional averment was added to this effect: "that there were not one million, five hundred thousand cubic yards of earth excavated in said work." But it is not stated how many yards of excavations and embankments there were.

As entitling the complainant to an accounting, and to the restraining order, the bill averred as follows: "Your orator further states and shows unto your honor that the debts claimed by the said Adler amount, in principal and interest, to about one hundred and sixty-eight thousand dollars; that the past eighteen months have been a period of business and financial depression, such as was hitherto unknown in the history of this country, and that in view of this fact, such an amount of money was necessarily very difficult to raise; but your orator states that if the said company or your orator, had the opportunity, it could, as he verily believes, and as he is informed, secure the necessary means to pay the said claim in full, and thereby relieve the said property from the said mortgage debt and free the said stock from said pledge, without regard to the validity or amount of said debt or the validity of said mortgage, or the validity of said pledge.

"Your orator further states unto your honor, that the said Van Kirk Land & Construction Company has endeavored to secure a short extension of time from the said Adler, but he, as your orator verily believes, is desirous of acquiring said property, and will not further grant an extension of the time of said sale, either of said lands or said stock. * * * *

"And your orator states that if the said sale is restrained by an order from this honorable court, and your orator and the said Van Kirk Land & Construction Company shall be allowed a reasonable opportunity to raise the money to pay off the said decree, he and it could and would secure all the money necessary to pay off said decree and pay off said Josiah Morris & Company, and all other creditors of said company; but that

if said property is permitted to be sold, that it will pass into the hands of the said Adler, and all the creditors of said company will be harassed and delayed in the collection of their debts. And that said Adler will acquire the said property at a very small amount as compared with the actual value of the property."

Before the filing of the bill, and on Sunday, application was made before a circuit judge in this State, and a preliminary injunction issued, restraining appellee from executing the decree in his favor, and also from selling the stock in the Perdido Land Company, under the power of sale, contained in the pledge.

The defendant moved the court to discharge the injunction which had been previously issued, upon the grounds, 1st, that said injunction was improvidently granted; 2d, that at the time the *fiat* for said injunction was made, no cause was pending in the chancery court' and the judge who made the order was without authority or jurisdiction to make the same; 3d, that said order was made on Sunday, the 11th day of November, 1894, and dated the 12th day of November, 1894; 4th, that the circuit judge who made the *fiat* for said injunction had no jurisdiction or power to make the same. This motion was granted, and the injunction was discharged. The respondent moved the court to dismiss the bill for the want of equity, and upon the submission of the cause upon this motion, the chancellor granted the same, and ordered the bill dismissed. From this decree the present appeal is taken by the complainant, who assigns as error the decree of the chancellor dismissing the bill and dicharging the injunction.

Gordon Macdonald, for appellant.—A consent decree can be impeached for fraud as well as any other decree. In fact a consent obtained by fraud is no consent.— Beach Modern Equity; *The Hiram*, 1 Wheat. 444; *Wooster v. Woodhull*, 1 Johns. Ch. 539; *Kemp v. Squire*, 1 Vesey, Sr. 205; *Harvey v. Thorpe*, 28 Ala. 251.

If false and fraudulent representations are made by an agent, the principal, although he be innocent of fraud, can not derive any benefit from the transaction founded on such representations. He must either repudiate the whole transaction, after he discovers the wrong, or, if he adopts it, he must be answerable for his agent's

conduct; for, where once a fraud has been committed not only is the person who committed it precluded from deriving any benefit from it, but every innocent person is so likewise, unless his interest has been innocently acquired subsequent to the fraud. Of course, the party who has been induced to enter into an agreement by the misrepresentations of an agent is entitled to have that agreement rescinded.—*New Brunswick &c. R. Co. v. Conybeare*, 9 H. L. Cases 726; *Mundorff v. Wickersham*, 63 Pa. St. 89; *Hartopp v. Hartopp*, 21 Beavan, 259.

JOHN P. TILLMAN and JOHN B. KNOX, *contra*.—It is well settled in this court, and, in fact, by all the courts, that a full and final accounting between the parties in interest will not be opened except for fraud or mistake, positively averred and clearly shown.—*Langdon v. Roane*, 6 Ala. 518; *Farnam v. Brooks*, 9 Pick. 212; *Leather Manfg. Bank v. Morgan*, 117 U. S. 96; *Chappedelaine v. Dechenaux*, 4 Cranch 306; 1 Bigelow on Fraud, 145; *Kilpatrick v. Henson*, 81 Ala. 464.

The bill is wholly without equity so far as the rights of complainant as a stockholder of the Van Kirk Land & Construction Company are concerned. It affirmatively appears from the allegations of the bill itself, and the exhibits thereto, that the complainant, as president of the Van Kirk Land & Construction Company signed the written agreement for the consent decree, the execution of which is sought to be enjoined in this case. A stockholder present at a meeting at which action is taken to confess judgment in favor of a creditor, against the corporation, or consenting thereto, can not be heard to question the regularity or validity of said judgment by injunction.—*Gravenstine's Appeal*, 49 Pa. St. 310. This is so, notwithstanding the act of the company in creating and contracting said debt, may have been *ultra vires*. If the company pass a resolution to create a debt (as in the purchase of its own stock) an act which is manifestly *ultra vires*, it is binding, especially on those present and participating.—*Gravenstine's Appeal, supra; Slee v. Bloom*, 5 Johns. 366; *Watt's Appeal*, 78 Pa. St. 370; *Kent v. Jackson*, 14 Beavan 367; *Graham v. Birkenhead*, 2 Mac. & G. 146; *Chapman v. Railroad Co.*, 6 Ohio St. 119; *Leo v. U. P. R. R. Co.*, 22 Blatch. (U. S.) 22.

Treated as a bill filed by complainant as a surety,

[Van Kirk v. Adler.]

liable as indorser or guarantor, the bill is equally without equity. It is not alleged that the complainant has paid or offered to pay any part of the debt of his principal, but asks an injunction against the creditor, proceeding to collect a decree against the principal and the sale of certain collaterals deposited as collateral security. A surety has no standing in a court of equity for reimbursement or subrogation until he actually pays the debt.—*Tyree v. Parham*, 66 Ala. 424; *Knighton v. Curry*, 62 Ala. 404.

BRICKELL, C. J.—The original bill, filed by the appellant, has for its objects, the injunction of the execution of a decree of the court of chancery, foreclosing a mortgage on lands, executed by the Van Kirk Land & Construction Company, a corporation organized and existing under the laws of this State, and the reopening of a stated account, the origin and basis of the mortgage debt, because of supposed false or over charges. The chancellor, in term time, sustained a motion to dismiss the bill for want of equity, offering the complainant leave to amend, which was declined, the bill was dismissed, and from the decree of dismissal the appeal is taken.

There is no theory or phase of the bill, in which it can be deemed to contain equity. The counsel for the appellant, proceed on the theory, that the bill makes a case in which a court of equity is accustomed to reopen an account stated, permitting it to be surcharged and falsified. If it could be admitted that the bill was maintainable on this theory, so far from showing, it negatives a proper title in the complainant to sue for the redress of the injury. The wrong, the injury, if any was committed, was committed, not against the complainant, but against the Van Kirk Land & Construction Company, the mortgagor, with whom the account was stated, becoming the origin and basis of the mortgage debt. The power to sue and be sued is inseparably incident to every corporation, and to enforce its rights, it must sue in its proper corporate name, as natural persons sue under similar circumstances. The right resides in the corporation, and it has full capacity to enforce it.—2 Cook on Stocks & Stockholders, § 751; 1 Morawetz Corp., § 238. There are exceptional cases in which the stockholder is permitted to maintain a suit for the

[Van Kirk v. Adler.]

protection of his equitable rights in the corporation, under particular circumstances or conditions, which are not now shown, if in any aspect, this case could be assumed to fall within the exception. The complainant may be the larger shareholder of the corporation, but the fact gives him no greater right to sue in his own name to enforce corporate rights, than the holder of a single share of stock would have  The corporation represented all the shareholders, has full capacity, has the right or title involved, and can alone institute suit to enforce the one or the other.

If the plaintiff could be regarded as the guarantor of or surety for the mortgage debt, he can make no defense to its payment which the principal waives, or repudiates, or by his conduct precludes himself from making, for the reason, as was said by Judge Ormond, in *Evans v. Keeland*, 9 Ala. 42 : "If the principal could abide by the contract, and the surety repudiate it, the strange result would be produced, that the principal would retain the fruits of the contract, whilst the surety would avoid the performance of his obligation, on the ground of its invalidity, in direct opposition to the acts of the principal, admitting that the contract was valid." The bill shows clearly that mortgagor and mortgagee deliberately stated the account; that the mortgagor had full opportunity to ascertain the correctness of the items of the account; that for the payment of the aggregate balance promissory notes were given, and a mortgage given to secure their payment. Subsequently, the stockholders and directors of the corporation reaffirmed the correctness of the account, consenting to a decree of foreclosure of the mortgage. It may be, that the mortgagor could maintain a bill to reopen the decree and account, but it could be maintained only on clear and precise allegations, supported by proof, of fraud, undue advantage, accident or mistake. There are no such allegations found in the present bill—the case made by it, is that the mortgagor abided by the settlement and decree, waiving all objection to the one or the other. It is not for the complainant to disturb the settlement or decree, so long as the mortgagor, without fraud or collusion with the mortgagees, for the purpose of prejudicing the complainant, acquiesces in it.

The decree of the chancellor must be affirmed.