## UNITED STATES v. NATIONAL SURETY CO.

District Court, S. D. Alabama, S. D.    July 28, 1927.

1. Statutes ⬳184, 217—Committee reports, statements of members of Congress, and evils intended to be remedied may be considered in determining doubtful language in statute.

Where the meaning of words used in a statute is doubtful, the purposes of Congress, as shown in committee reports and statements of its members, as well as the evils intended to be remedied by the enactment, may be considered.

2. Aliens ⬳44—Determination of immigration officer or Secretary of Labor as to bona fides of alien seaman, regarding right to shore leave in American port, is final, if examination is fair (Comp. St. § 8392; Immigration Act 1924, §§ 3, 19, 20 [Comp. St. §§ 4289¾aa, 4289¾ii, 4289¾j]).

Under Immigration Act 1924, §§ 3, 19, 20 (Comp. St. §§ 4289¾aa, 4289¾ii, 4289¾j), it is for immigration officer or the Secretary of Labor to determine the bona fides of an alien seaman, as respects his exception from term "immigrant" in section 3, and right to shore leave in a United States port, and their determination that any alien seaman is not a bona fide seaman is final, if the examination was fair and proper, and such seaman must be detained on board or deported as ordered, and, if seaman is passed as bona fide seaman, he should have shore leave and all the rights granted by Seamen's Act (38 Stat. 1164), in view of Rev. St. § 4612 (Comp. St. § 8392).

3. Aliens ⬳39—Congress may exclude aliens, or prescribe terms on which they may come into or remain in country.

Congress may exclude aliens altogether, or prescribe the terms on which they may come into or remain in the country.

4. Principal and surety ⬳143—Where principal remains bound, surety cannot object.

Where principal on surety bond remains bound, surety cannot object to enforcement of liability thereon.

At Law. Action by the United States against the National Surety Company. On demurrer to complaint. Demurrer overruled.

Alex C. Birch, U. S. Atty., of Mobile, Ala.

Pillans, Cowley & Gresham, of Mobile, Ala., for defendant.

ERVIN, District Judge. This is a suit on a bond made by the defendant surety company, to recover $11,000 on the following facts:

The Greek steamship Chelatros arrived in Mobile, having on board 30 aliens signed up as seamen, and the immigration officer located in Mobile, pursuant to the provisions of section 20 of the Immigration Act of 1924 (Comp. St. § 4289¾j), notified the master of the ship in writing that he must detain on board the ship 17 of these named seamen; that the master failed to detain on board 11 of the 17 named seamen, for which the immigration officer entered a fine of $1,000 for the failure to detain each of these 11 men; that the vessel desired to sail before the final determination of the liability for the payment of said fine, and the bond sued on was given and the vessel cleared by the collector of customs at Mobile.

The bond recites: "(1) If the said prin-

cipal shall pay to the collector of customs at the port of Mobile, Alabama, promptly on demand, the amount of penalty finally imposed on the vessel, her owners, or master, for violation of the above act, and shall promptly pay any other costs, charges, penalties, or other sums found legally due the United States of America from the vessel, her owners, or master, on account of such violation, * * * then this obligation is void; otherwise, it shall remain in full force and effect."

Demand was made upon the defendant for the payment of the amount, and upon its failure this suit was brought.

Demurrers have been filed to the complaint, questioning the right of the immigration officer to require detention on board the vessel of bona fide seamen, and reliance is had upon the case of United States v. Stump (C. C. A.) 292 F. 354, construing the Act of February 5, 1917, 39 U. S. Stat. at Large, pt. 1, p. 895 (Comp. St. § 4289¼a et seq.)

I agree to the construction placed upon the act of 1917 by the Stump Case, and also to the proposition that the Secretary of Labor could not add to or extend an act of Congress by a rule. That case was decided July 5, 1923, and on May 26, 1924, the act in question was passed. It repeals the act of 1917, but re-enacts section 32 (Comp. St. § 4289¼r) as section 19 (Comp. St. § 4289¾ii), and then adds section 20 (Comp. St. § 4289¾j), which takes the place of the rule that had been passed by the Secretary of Labor with certain variations.

So we are not now concerned with the power of the Secretary to pass a rule, but have for construction an act of Congress itself. Sections 3, 19, and 20, so far as they bear on the question, read as follows:

Act of May 26, 1924, United States Statutes at Large, vol. 43, p. 154 (Comp. St. § 4289¾aa). Definition of "Immigrant." Sec. 3. "When used in this act the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, except * * * (5) a bona fide alien seaman serving as such on a vessel arriving at a port of the United States and seeking to enter temporarily the United States solely in the pursuit of his calling as a seaman."

Section 19, p. 164. Alien Seamen. "No alien seaman excluded from admission into the United States under the immigration laws and employed on board any vessel arriving in the United States from any place outside thereof, shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to such regulations as the Secretary of Labor may prescribe for the ultimate departure, removal, or deportation of such alien from the United States."

Section 20. "(a) The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman (which inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs.

"(b) Proof that an alien seaman did not appear upon the outgoing manifest of the vessel on which he arrived in the United States from any place outside thereof, or that he was reported by the master of such vessel as a deserter, shall be prima facie evidence of a failure to detain or deport after requirement by the immigration officer or the Secretary of Labor.

[1] I recognize the rule that, where the meaning of words used in an act are doubtful, the purpose of Congress may be looked to, and the expressions of this purpose, as shown in the committee reports and statements of its members to Congress, can be looked to, as well as the evils intended to be remedied by the enactment. I have looked to these sources, and I find that the Congressional Record shows very decided differences bewteen Senators Reed of Pennsylvania and Shipstead as to the meaning of the words used in the act, so far as seamen are concerned.

Reed claims that the act does not affect bona fide seamen, that by reason of section 3 they are excepted, while Shipstead contends that, while section 3 excepts them, sections 19 and 20 bring them under the provisions of the Immigration Law. See pages 8831, 8832, Congressional Record 1924.

There is no dispute as to the mischief intended to be remedied. It was found that un-

der the act of 1917 many men signed up as seamen, and when they got here they left the ship; neither the master nor the ship was responsible unless collusion could be established, and that was almost impossible; so the act of 1924 was written to enable the immigration officers to have more control over such persons, and to put the burden of proof on the master, instead of the government.

[2] With this difference of opinion as to the meaning of the words used, but unaminity as to the purposes to be accomplished, let us consider for ourselves the language found in the act. First, we see by section 3 that only "bona fide" seamen are excepted from the term "immigrant." The exception gives a measure of a definition. He must be a "seaman serving as such on a vessel," and he must be "seeking to enter temporarily the United States *solely* in the pursuit of his calling as a seaman."

Who is to determine the bona fides of a seaman? A seaman is defined by section 4612, Rev. Stat. (Comp. St. § 8392), "every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same [vessel] shall be deemed and taken to be a seaman." Certainly such a seaman as this was not intended to be, nor was he in terms, excepted by this act from the term "immigrant," for it was only a bona fide seaman who was excepted, and not any person employed on a vessel.

This was the very class of people the act was aimed at—those who served as employees on a ship until they could get into this country, and often such employment was given by the master in collusion, to enable the so-called seaman to enter the country and then leave the vessel. Recognizing that such an employee was a seaman, but not one who intended to make sea service his calling, and that many of them were excluded by the immigration laws, Congress re-enacted section 19, which was section 32 of the act of 1917.

Bearing in mind that many alien seamen had signed up and come here intending to desert, while some who signed intended to follow the sea, it went a step further and passed section 20, which requires the detention on board of *"any* alien seaman," not *"any excluded* alien seaman," until inspected by the immigration officer; then it goes on to require the detention on board or deportation of such seaman *after such inspection,* if *required by such immigration officer* or the *Secretary of Labor.*

Here Congress answers the question as to who is to determine the bona fides of the seaman, and also says what is to be done with a non bona fide seaman. He is to be detained aboard ship and carried away with the ship or deported. The owner, charterer, agent, consignee, or master of any vessel arriving from any place outside the United States, who fails to detain any alien seaman until inspected, or after inspection fails to detain or deport on requirement of the immigration officer or Secretary, shall be fined.

To my mind it is perfectly clear that the immigration officer or the Secretary of Labor shall determine the bona fides of the seaman, and, if they determine any man or men to be non bona fide seamen, this is final, if the examination was fair and proper, and he must be detained on board or deported as ordered. I can readily understand that the immigration officer may have information showing that certain of the men signed as seamen come with the intention to desert, and not as bona fide seamen who are going to follow the sea for a living, and not entering solely in the pursuit of their calling.

So construed, the purposes of the act harmonize with the language in which it is expressed. If a seaman is passed by the immigration officer as a bona fide seaman, then he comes under the exception contained in section 3 and should have shore leave and all the rights granted by the Seamen's Act (38 Stat. 1164).

[3] The Congress may exclude aliens altogether, or prescribe the terms upon which they may come into or remain in the country. The question, therefore, is not the power of Congress, but its intent and purpose as expressed in legislation. Lapina v. Williams, 232 U. S. 88, 34 S. Ct. 196, 58 L. Ed. 515. This case is specially applicable to the instant case, because it was considering a change in a statute where the words "alien immigrants," as previously used, were made to read "alien" in the subsequent statute, and held that the omission of the word "immigrants" broadened the statute, so as to make it include all aliens, when it previously applied only to such aliens as were immigrants. It also held that the use of the word "immigrant" in the title did not control the body of the act, where the word "immigrant" was omitted.

It is held in Cunard S. S. Co. v. Mellon, 262 U. S. 125, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306, that the Congress may exclude all alien ships; so it may impose the conditions on which they may enter. In the instant case the ship had 30 alien seamen signed up; the immigration inspector ordered 17 of these detained on board, evidently classing them as non bona fide seamen. I presume he properly permitted the other 13 shore leave as bona

fide seamen. I cannot presume that he acted unfairly in so doing, but, on the contrary, I presume he had evidence showing the 17 were not bona fide seamen.

[4] I have considered the meritorious question as to the seamen, but there is another question, though a technical one, that cannot be overlooked. The captain, the principal in the bond, is not raising any question; the fine still stands as against him. It is the surety only who objects, and it is well settled that where the principal remains bound the surety cannot object. Van Kirk v. Adler, 111 Ala. 113, 20 So. 336.

An order will be entered overruling the demurrer.