**NATIONAL SURETY CO. v. HOLTZMAN,**
Collector of Customs (two cases).

Nos. 2986, 3001.

Circuit Court of Appeals, Fourth Circuit.

Sept. 19, 1930.

Homer L. Loomis, of New York City, and John Philip Hill, of Baltimore, Md. (Loomis & Ruebush, of New York City, and John Henry Skeen, of Baltimore, Md., on the brief), for appellant.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and WATKINS District Judge.

NORTHCOTT, Circuit Judge.

These are actions brought in the District Court of the United States for the District of Maryland on bonds in which appellant was surety, in case No. 2986, with the Mutual Lloyd Marine Corporation, general agents of the steamship Emilia Pellegrina as principal, and in case No. 3001, with the captain of the steamship Dalmazia as principal. The condition of both bonds is similar, and recites that, whereas a claim is asserted by the collector of customs of the port against the steamships for a fine on account of their alleged failure to detain on board alien seamen, the condition is to the effect that the surety shall pay the collector of customs any and all fines for which the said steamships are liable under the provisions of sections 19 and 20 of the Immigration Act of 1924 (8 USCA §§ 166, 167).

Trial was had before the judge below, who gave judgment for the plaintiff in both cases, from which action this appeal was taken.

The same number of seamen were involved in each case, and, as the cases were argued together in this court and virtually the same points are involved in each, they will be considered together in this opinion. In the case of the Emilia Pellegrina, this ship arrived at the port of Baltimore in October, 1926, and when she came to clear the master went to the office of the assistant Commissioner of Immigration at Baltimore and reported that four members of the crew ordered to be detained had deserted, and, in order that she might clear, gave the bond sued on.

In the case of the Dalmazia, she came to the port of Norfolk in April, 1927, where she was notified by the immigration inspector, at that port, to detain on board all members of the crew, and on leaving that port for the port at Baltimore, for which she did not have to clear, notice was given the collector of customs of the port of Baltimore of the notice given in Norfolk. When the vessel cleared at the port of Baltimore, the captain acknowledged the desertion of four members of the crew of that vessel, and bond was given by the captain as principal and appellant as surety to pay any fine for which the vessel might be liable, in order that she might clear.

The sections of the statute, under which these proceedings were held, are sections 19 and 20, of the act of May 26, 1924 (8 USCA §§ 166, 167), and read as follows:

"(19) Landing of excluded seamen prohibited; temporary landing; deportation within three years. No alien seaman excluded from admission into the United States under the immigration laws and employed on board any vessel arriving in the United States from any place outside thereof, shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to such regulations as the Secretary of Labor may prescribe for the ultimate departure, removal, or deportation of such alien from the United States. Any alien seaman who shall land in a port of the United States contrary to the provisions of this subchapter shall be deemed to be unlawfully in the United States, and shall, at any time within three years thereafter, upon the warrant of the Secretary of Labor, be taken into custody and brought before a board of special inquiry for examination as to his qualifications for admission to the United States, and if not admitted said alien seaman shall be deported at the expense of the appropriation provided in section 156 of this title.

"(20) (a) Detention of seamen on board vessel until after inspection; detention or deportation; penalty; clearance to vessels. The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman (which inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs.

"(b) Prima facie evidence of failure to detain or deport. Proof that an alien seaman did not appear upon the outgoing mani-

fest of the vessel on which he arrived in the United States from any place outside thereof, or that he was reported by the master of such vessel as a deserter, shall be prima facie evidence of a failure to detain or deport after requirement by the immigration officer or the Secretary of Labor.

(c) Deportation; procedure. If the Secretary of Labor finds that deportation of the alien seaman on the vessel on which he arrived would cause undue hardship to such seaman he may cause him to be deported on another vessel at the expense of the vessel on which he arrived, and such vessel shall not be granted clearance until such expense has been paid or its payment guaranteed to the satisfaction of the Secretary of Labor."

■ There is little or no dispute as to the facts, and it is contended on behalf of the appellant that the determination of the liability to the payment of the fine was a condition precedent to the liability of appellant on its bond; and, such determination of liability never having been made, this action was prematurely brought; and that the proof failed to establish the violation of the statute or the liability of any particular person therefor, for whom the appellant in any event could be considered answerable.

The question as to whether there had been any determination of the liability for the fine was raised by appellant, who will be referred to here as the defendant, by special plea, the effect of which was to claim that there must have been some judicial determination of the liability of the boats for the fines before the suit could have been brought against the surety. The court below sustained the demurrer to this plea, we think, properly. As far as the immigration authorities were concerned, the fine had been determined and assessed, and the present proceedings were properly brought to test the legality of such determination and assessments. The record shows that in the case of the Emilia Pellegrina the Commissioner General of Immigration had directed that appropriate steps be taken to collect the fine, and a bill for the same had been presented to the agents of the ship from the office of the United States Department of Labor, Immigration Service. In the case of the Dalmazia the necessary formal steps to assess the fines were taken by the proper officials,

and the filing of these suits was the right way to test the legality of the action of the authorities.

The defendant had its day in court upon the trial of these cases, and it certainly could not be said that an action should first have been brought to determine the legality of the fines and then another action against the surety for their collection. Congress never contemplated such a course. The ship, because of the giving of the bond, is released and is not within the jurisdiction of the court, and a proper determination of all issues involved can be had in the present trial. A discussion of somewhat similar issues will be found in the case of United States v. National Surety Co. (D. C.) 20 F.(2d) 972.

■ It is contended by appellant that the principal should have been made party to the suit, but "one seeking a, money judgment against the surety is not bound to bring in the principal as a party to the action." Ettlinger v. National Surety Co., 221 N. Y. 467, 117 N. E. 945, 3 A. L. R. 865, and notes under same.

As was well said by Judge Parker of this court in the case of the New Amsterdam Casualty Co. v. United States Shipping Board Emergency Fleet Corporation, 16 F. (2d) 847, 851: "It is the duty of the surety to see that the principal performs his contract in accordance with its terms and to perform it himself if the principal fails." Here the surety in executing the bond had directly taken upon itself the responsibility of paying all fines for which the ships were liable. They were found liable for the fines assessed, and the obligation of the surety undertaken in the bond should be carried out.

■ In the case of the Dalmazia it is contended that the notice to detain the seamen aboard the ship being served by the authorities of the port of Norfolk was not effective in the port of Baltimore. We do not think so. The vessel did not clear at Norfolk, but at Baltimore. The notice was transmitted to the collector of the port at Baltimore, and there the captain of the ship admitted the desertion of the seamen. The notice was, under the circumstances, effective in the port of Baltimore.

There was no error in the trial, and the judgment of the court below in both cases is accordingly affirmed.