**YONEJIRO NAKASUJI v. SEAGER et al.**
No. 7335.

Circuit Court of Appeals, Ninth Circuit.
Oct. 8, 1934.

**38**

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Robert Winfield Daniels and Joseph John Irwin, Asst. U. S. Attys., all of Los Angeles, Cal., for appellees.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

Appellant instituted this action to recover from the Collector of Customs, for District No. 27, a $5,000 fine levied against appellant for failure to deport five Japanese alien seamen, as required by an order of the immigration department, dated March 6, 1931. The fine was imposed under section 20 of the Immigration Act of 1924 (8 USCA § 167), which provides, in part, that:

"The owner * * * or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman, * * * or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs."

That section also provides that:

"No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs."

In accordance therewith, appellant was required to deposit with the Collector the amount of the fine to allow his vessel, the Western Enterprise, to clear from port pending final determination as to liability for the fine.

The following facts are not in dispute. The Western Enterprise cleared from San Pedro, Cal., for Ensenada, Mexico, on March 4, 1931, proceeding in ballast. On March 5, 1931, at Ensenada, appellant signed on as additional members of his crew the said five aliens, and the vessel then returned to San Pedro, in ballast. On March 6, 1931, when the vessel arrived at San Pedro, an inspector of the United States Immigration Service boarded the boat and delivered to appellant, its master, a notice "to detain on board and deport from the U. S." the five Japanese aliens.

The vessel remained in San Pedro with its crew, including the five aliens, until March 15, 1931, when it cleared for Mexican waters, proceeding to Magdalena Bay, where the five aliens were not landed but stayed aboard the boat and engaged in fishing. The vessel then returned and remained at San Pedro until April 13, 1931, when it again cleared for Mexican waters to fish. At all these times the five aliens remained aboard.

The vessel returned to San Diego on May 21, 1931, at which time the United States Immigration Service served a notice on appellant "to detain on board while in U. S. ports" the said five alien members of the crew. This notice was similar to the previous one, dated March 6, 1931, except that the earlier order required appellant to "detain on board *and deport*" the aliens.

The vessel then proceeded to San Pedro, where it remained while repairs were being made to its engines. The aliens remained aboard at all times. On June 11, 1931, an immigration officer made application to the Secretary of Labor for a warrant for the arrest of the aliens on the ground that they had remained in the United States for a longer time than permitted by the Immigration Act of 1924.

On July 6, 1931, the United States Immigrant Inspector, acting for the inspector in charge of the immigration service at San Pedro, served on appellant, "notice of liability for fine," for "failure to detain on board and deport alien seamen." Appellant filed with the United States Immigration Service an answer and protest against the imposition of the fine. Pending final determination as to liability for fine, and after a hearing in the deportation proceedings instituted against the aliens, the Secretary of Labor, on August 3, 1931, in accordance with recommendations of a Board of Review, made the following order as to each of the aliens:

"It is therefore recommended that unless the Master of the SS 'Western Enterprise' now agrees to effect the deportation of this alien in the manner contemplated by law, the said alien be deported on another vessel at the expense of the vessel on which he arrived, and such vessel shall not be granted clearance until such expense has been paid, or its payment guaranteed to the satisfaction of the Secretary of Labor, pursuant to paragraph (e), section 20, of the Immigration Act of 1924 [8 USCA § 167]."

Thereupon the aliens were deported by appellant, aboard the Western Enterprise, by clearing from San Pedro on August 24, 1931, and proceeding to Ensenada, Mexico, where they were landed. However, as above stated, the Western Enterprise was not allowed to clear until the sum of $5,000 was deposited with the Collector to secure payment of the fine, which deposit appellant made under protest on August 24.

Thereafter, on September 29, 1931, appellant's protest against the imposition of the fine was overruled and the Secretary of Labor ordered that he be fined the sum of $5,000 for failure to deport the five aliens as required by the order of March 6, 1931, representing a fine of $1,000 as to each of the aliens.

This action was then instituted in the court below to recover the amount of the fine, which sum, as indicated, had been deposited with the Collector to allow the Western Enterprise to clear from San Pedro. A temporary restraining order issued enjoining the Collector from "depositing and paying into the Treasury of the United States the deposit of $5,000 placed with you by Yonejiro Nakasuji on or about the 24th day of August, 1931, as deposit on contemplated fine for clearance of fishing vessel 'Western Enterprise', and you are further restrained and enjoined from appropriating said money or any of it for the benefit of the United States." The case was submitted to the court on the records of the United States Immigration Service. The court rendered an opinion (3 F. Supp. 410), and entered a decree dismissing the bill, on the ground "that the penalty imposed herein against the plaintiff [appellant] by the Secretary of Labor was duly and regularly imposed and that liability therefor was incurred by the plaintiff herein for violation of the immigration laws." The decree dissolved the temporary restraining order, but thereafter an order was entered restoring it pending the appeal to this court to obtain a remission of the fine imposed.

No attack is made upon the finding of the immigration officer that the five aliens in question were not bona fide seamen. The principal question is whether the aliens were in fact deported, as ordered. Appellant contends that "in taking these aliens to Mexican waters within ten days after the order was originally served, on March 6, [he] deported them to a foreign place. In other words, appellant believes and asserts that the order to deport was effected by simply 'taking them out of the United States'; that a landing of the aliens in a foreign place was not necessary to accomplish and effect the order of deportation"; and that "section 20 is fully complied with when, after notice by the Immigration Service, alien members of the crew are held on board the vessel and carried away with it when it departs."

We cannot concur in this view. "Deportation" is "the removal or sending back of an alien to the country from which he came." 18 C. J. 558, citing Black L. D. Appellant did not comply with the order to deport by simply taking the aliens to foreign waters, keeping them aboard his vessel, and returning here. There was no removal of the alien "to the country from which he came," or to any other foreign place. In fact, it is doubtful if the aliens were removed from the United States, for they were still aboard an American vessel, and "an American vessel is deemed to be a part of the territory of the state within which its home port is situated, and as such

a part of the territory of the United States." Case of the Chinese Cabin Waiter (C. C.) 13 F. 286, 289, opinion by Justice Field.

To uphold appellant's contention of what constitutes "deportation" would tend to frustrate the manifest purpose of the statute, which was enacted to prevent the landing of non bona fide alien seamen in violation of the immigration laws (see United States v. National Surety Co. (D. C.) 20 F.(2d) 972), for, as pointed out in the brief of appellee, "to permit the harbors of the United States to be filled with vessels containing alien non bona fide seamen for an indefinite period, would greatly increase the hazard of the landing of these aliens under the cover of darkness or at some time when the immigration authorities were not permitted to keep a constant vigil upon these vessels." Quite obviously, such would be the result if deportation of an alien could be effected by taking him on a round trip to foreign waters; and the immigration officers would be indeed busy serving "notices to deport" as fast as the vessels returned to port.

█ It will be noted that section 20, supra, subjects the master to the fine prescribed if he fails to detain the alien seaman on board until inspection, or "fails to detain such seaman on board after such inspection *or* to deport such seaman if required by such immigration officer or the Secretary of Labor." Because of the use of the disjunctive "or" (which we have italicized), instead of the conjunctive "and," appellant contends that "this section only authorizes the inspector to do one of two things—either he can order the master to detain the seamen on board while the boat is in American ports, or he or the Secretary of Labor can order the master to deport the seamen—but he is not authorized to do both." The section in question does not warrant such a conclusion. As said by the trial court: "It is plain that any one of three acts subjects the master to the fine: First, failure to detain the seamen until inspection; second, failure to detain them after inspection; third, failure to deport the seamen if required. The power of the immigration officer plainly is not exhausted when he orders one of the acts done. The master is liable on failure to perform any of the three. A considerable discretion should be possessed by the immigration officer, and he may find it necessary, in order to insure deportation, to require confinement of the alien to the vessel also. The language of the act clearly gives this power." 3 F.Supp. 410, 412.

█ It is said that neither by statute nor departmental rule is any time limit fixed within which an order to deport must be accomplished, and it is therefore argued that appellant did comply with the order to deport, because he did detain the aliens on board and did deport them. It must be remembered, however, that deportation was not effected until after the fine had been levied and steps taken to collect it, and after an order had been entered on August 3, in the deportation proceedings, requiring appellant to either deport the aliens himself or stand the expense of deporting them on another vessel. As above stated, an order to deport was served on appellant on March 6, and on May 21, ten weeks later, the aliens were again found on board appellant's vessel in an American port, although in the meantime the vessel had made two trips to foreign waters. It would appear therefore that appellant had no intention of complying with the order to deport served on March 6, and that when deportation of the aliens was finally effected by appellant on August 24 it was in compliance with the order of August 3, above referred to. Under the circumstances, therefore, the action of the immigration authorities in imposing the fine seems to have been justified.

Affirmed.